Dear Mr. Murchison,
You have requested an opinion of this Office regarding the authority of the Cane River Waterway District (the "District") in regulating certain activities on Cane River Lake ("the Lake").[1] The District is governed by the Cane River Waterway Commission (the "Commission") as set forth in La.R.S. 34:3262. Your request stems specifically from issues on the lake involving the District's authority to regulate the water bottom of Cane River Lake.
In your request, you explain that Cane River Lake is an oxbow lake associated with the Red River water system, is a navigable water body, and that there are earthen dams at the northern and southern ends of the Lake.
In posing the specific questions set forth below, you stated that the Commission currently issues permits for the construction of structures that are to be located below *Page 2 
normal pool stage of the Lake. You also explained that this "permitting process" was developed over time to address safety issues. Specifically, these safety ordinances and guidelines were created subsequent to a study of the Lake that essentially established a "safe channel" for navigation of the Lake, and that, over time, this procedure has become a "permit process" that has allowed landowners to have the Commission review and approve plans before constructing anything that would adversely affect boating or navigation on the Lake.
You state that the Commission has now adopted a plan to provide for an easement in favor of the riparian land owner for the placement of structures on the Lake bottom, and that this plan was developed as a method of encouraging landowners to comply with regulations and to track the original water's edge. You noted that when a landowner currently places a structure on the water bottom of the Lake, a title issue surfaces in that the landowner has no ownership of the structure or rights to transfer it to a third party purchaser. Therefore, the District has found that the creation of a process to allow for an easement or servitude would encourage landowners to comply with the permitting process and also vesting them with rights in permitted structures is in order. You additionally mention that an added benefit of such a permitting process and/or granting of an easement, will document the location of the bank as well as the extent of the ownership, thereby establishing the State's ownership boundary on these tracts. As an example, you state that with "a seawall placed two feet beyond the water's edge, the ownership of the state would be established and could be tracked."
In your request, you specifically ask:
 1. May the Commission regulate the construction of seawalls, docks, boathouses, and other structures in the bed of the Lake through a permitting process and grant easements for permitted structures?
 2. May the Commission take legal action to require a riparian landowner to remove fill that the landowner has placed on the bed of the Lake?
In order to address these inquiries, we must: (1) consider the authority granted to the District by the Legislature, (2) consider other laws and State agencies with concurrent or exclusive authority over matters such as these, and (3) examine how these laws affect one another.
Authority of Cane River Waterway District
In considering what the District may regulate or what legal actions are available to the District, La.R.S. 34:3262 sets forth that the District "is created for the object and purpose of establishing, operating and maintaining, individually or in co-operation with the federal government, the state and its various agencies, subdivisions and public *Page 3 
bodies, a navigable waterway system to be known as the Cane River Waterway," and that "[t]o that end and for the purpose of this Chapter, the district shall be governed by a body or commission which shall be known as the Cane Waterway Commission."
La.R.S. 34:3269 sets forth the specific powers and authority granted to the District. It states, in pertinent part, as follows:
 In addition to the powers and authority elsewhere granted in this Chapter, the commission is hereby granted and shall have and may exercise all powers necessary or convenient for the carrying out of its objects and purposes, including, but without limiting the generality of the foregoing, the following:
 (1) To sue and be sued, and as such to stand in judgment.
 * * * (5) To bear the expense, in whole or part, of the relocation, construction and maintenance of public ways within the lands acquired by the commission.
 (6) To effectuate and maintain proper depths of water to accommodate the business of the commission, and to regulate the use of water from the waterway.
 (7) To make and collect reasonable charges for the use of all structures, works, locks, wharves, anchorages and special facilities constructed and administered by the commission, and for any and all services rendered by it, but not for the general right of passage in the waterway, and to regulate reasonably the fees and charges to be made by privately owned wharves, docks, warehouses, elevators and other facilities located on property owned by the commission or located within the right of way of the waterway when the same are offered for the use of the public.
 * * * (13) Notwithstanding any provision of law to the contrary and in particular R.S. 34:851.27, to otherwise regulate and be the regulatory authority of the Cane River Waterway and its use. By example, and not as a limitation, this is to include water traffic regulation, such as the size and speed of boats and other vessels. *Page 4 
In further understanding the authority granted to the District by the Legislature, it should be noted that La.R.S. 34:3276 states that "[t]his Chapter shall be liberally construed to promote the purposes for which it was enacted."[2]
Other Laws Governing Encroachments and/or Fill on State Water Bottoms
La.R.S. 41:1701 states as follows:
 [t]he beds and bottoms of all navigable waters and the banks or shores of bays, arms of the sea, the Gulf of Mexico, and navigable lakes belong to the state of Louisiana, and the policy of this state is hereby declared to be that these lands and water bottoms, hereinafter referred to as "public lands", shall be protected, administered, and conserved to best ensure full public navigation, fishery, recreation, and other interests. Unregulated encroachments upon these properties may result in injury and interference with the public use and enjoyment and may create hazards to the health, safety, and welfare of the citizens of this state. To provide for the orderly protection and management of these state-owned properties and serve the best interests of all citizens, the lands and water bottoms, except those excluded and exempted and as otherwise provided by this Chapter or as otherwise provided by law, shall be under the management of the Department of Natural Resources, hereinafter referred to as the "department". The State Land Office, hereinafter referred to as the "office", shall be responsible for the control, permitting, and leasing of encroachments upon public lands, in accordance with this Chapter and the laws of Louisiana and the United States.[3]
La.Const. Art. IX, § 3 prohibits the State from alienating the beds of navigable water bodies, "except for purposes of reclamation by the riparian owner to recover land lost through erosion." Therefore, it should first be noted that any State-owned water bottom that has been "filled" by a riparian owner will remain owned by the State unless legally "reclaimed," because of this general constitutional prohibition against alienating State owned water bottoms. *Page 5 
Reclamation
La.R.S. 41:1702(B)(1) states that:
 [p]ursuant to the authority of Article IX, Section 3 of the Constitution of Louisiana, owners of land contiguous to and abutting navigable waters, bays, arms of the sea, the Gulf of Mexico, and navigable lakes belonging to the state shall have the right to reclaim or recover land, including all oil, gas, and mineral rights, except as otherwise provided in Subsection E of this Section, lost through erosion, compaction, subsidence, or sea level rise occurring on and after July 1, 1921, in accordance with the procedures set forth in this Title for the fixing of boundaries by mutual consent and, also, those procedures applicable to contested boundaries.[4]
Therefore, if any riparian landowner on Cane River Lake seeks to "reclaim" property lost through erosion, compaction, subsidence, or sea level rise, the procedure is set forth in La.R.S. 41:1702, et seq.
Permits and Leases
Also, pursuant to regulations enacted under La.R.S. 41:1703, the State Land Office may permit encroachments and/or landfill on State water bottoms.[5] La.R.S. 41:1706 sets forth the various classes of permits which the State Land Office is authorized to issue. Class A Permits are for reclamation of lands lost through erosion, which is explained above.[6] Class B Permits are for the construction of bulkheads or flood protection structures in proximity to the bank or shore.[7] Class C Permits are for the construction of commercial wharves or piers.[8] Class D Permits are for the construction of structures other than wharves or piers.[9] Class E Permits are for the construction of landfills upon non-eroded State lands.[10]
Depending on the circumstances surrounding each permit, certain encroachments also require the landowner to obtain a lease for the maintenance of the encroachment under *Page 6 
La.R.S. 41:1711. Additionally, while La.R.S. 41:1708 states that the "[o]wners of noncommercial piers and wharves, Class A and Class B encroachments shall not be subject to lease requirements," it also states that "[a]ny exempt wharf or pier described hereinabove shall be subject to lease if it is determined to unduly interfere with public navigationand fishery."[11]
In considering the laws relevant to the issues presented in your opinion request, it is our opinion that the State Land Office has the authority to issue permits for the construction and leases for the maintenance of "seawalls, docks, boathouses and other structures" under the various categories of permits described above.[12] In addition, the State, through the State Land Office, has jurisdiction over the placing of fill in State-owned water bottoms, whether such placement be through a Class E permit, or a proper reclamation of eroded land pursuant to La.R.S. 41:1702, et seq.[13]
Analysis
1. May the Commission regulate the construction of seawalls, docks,boathouses, and other structures in the bed of the lake through apermitting process and grant easements for permitted structures?
While the Cane River Waterway District is vested with the authority to "regulate and be the regulatory authority of the Cane River Waterway and its use,"[14] the Legislature has clearly provided the State Land Office with the authority to issue permits for the construction of seawalls, docks, boathouses, and other structures in the beds of State-owned water bottoms. Because Cane River Lake is, in fact, a navigable waterway owned by the State, the State Land Office is the State agency charged with permitting the construction of seawalls, docks, boathouses, and other structures on the water bottom of Cane River Lake.
Despite the fact that the State Land Office is charged with the permitting and leasing of State-owned water bottoms, La.R.S.34:3262 states that the District "is created for the object and purpose of establishing, operating, and maintaining, individually or in cooperation with the federal government, the state and its various agencies . . . a navigable waterway system to be known as the Cane River Waterway." Because the Emphasis added. *Page 7 
District's stated purpose includes cooperating with the State and its agencies, this Office is of the opinion that the District, as the regulatory authority for the Cane River Waterway, still retains the authority to establish safe navigational boundaries on Cane River Lake as it has done in the past. In cooperating with the State Land Office, the Cane River Waterway District should establish rules and regulations that help the State Land Office understand which encroachments would unduly interfere with public navigation and fishery.
2. May the Commission take legal action to require a riparian landownerto remove fill that the landowner has placed in the bed of the lake?
La.R.S. 34:3269 (1) sets forth that the District has the ability "[t]o sue and be sued, and as such to stand in judgment." Your opinion request specifically states that you would like to know "whether the Commission has the authority and is the Commission required to take legal action to require a landowner to remove fill that the landowner has placed in the lake bottom?" In considering the first part of this question, the District clearly has the authority to sue and be sued, as well as the statutory authority to regulate the Cane River Waterway. This Office is of the opinion that the District would have legal standing to pursue such action, if it believed this illegally-placed fill interferes with the regulation of navigation on Cane River Lake and/or any other regulatory authority vested with the District. While the District has the ability pursue legal action on this issue, it is also vested with the decision making authority to decide whether or not such an action is appropriate.
In further answering this question, La.R.S. 41:1714 provides the Attorney General with the statutory authority "by injunctive or other relief, [to] prevent the unlawful creation of encroachments without permit, or which by construction or continuing existence, create a hazard to the public interests" or to "compel or effect the removal or demolition of the encroachment at the expense of the parties responsible for their creation." La.R.S. 41:1714(A) states that "[a]ny encroachment constructed or maintained without permit or lease, or abandoned shall be a nuisance and an obstruction and embarrassment to the public use and interest." While this authority does exist, La.R.S. 41:1714(C) further states that:
 [i]n those cases where it is determined that an encroachment is constructed or maintained without lease or permit by reason of unintentional mistake or error, resulting in a failure to apply to the office, the persons responsible shall have thirty days from written or published notice to complete application to the office before appropriate action is instituted by the attorney general.
While it is impossible for the State to lose "ownership" of its water bottoms through the placing of fill by private landowners, the District should contact this Office, providing all *Page 8 
relevant information that supports any assertion that encroachments are being constructed or maintained in the water bottom Cane River Lake without a permit or lease from the Land Office. The District should also establish whether these encroachments are "a nuisance and an obstruction and embarrassment to the public use and interest."[15] After reviewing all relevant information, this Office may pursue legal action under La.R.S. 41:1714, if deemed necessary.
CONCLUSION
While the Cane River Waterway District is vested with the authority to regulate and be the regulatory authority of the Cane River Waterway and its use, the Legislature has provided the State Land Office with the authority to issue permits for encroachments or landfill in the beds of State-owned water bottoms. The District, as the regulatory authority for the Cane River Waterway, retains the authority to establish safe navigational boundaries as it has done in the past, and should establish rules and regulations that assist the State Land Office in understanding which encroachments unduly interfere with public navigation and fishery. The District has legal standing to sue a private landowner for the placing of fill in Cane River Lake, provided the fill interferes with the navigation of Cane River Lake and/or any other regulatory authority vested with the District. Pursuant to La.R.S. 41:1714, the Attorney General also has the authority to prevent or compel the removal of illegal encroachments on State-owned water bottoms.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY: __________________________ DANIEL D. HENRY JR. Assistant Attorney General
 JDC/DDH/jv
[1] It should be noted that while your request deals with issues involving Cane Lake specifically, that the authority of the Cane River Waterway Lake District, provided in La.R.S. 34:3261, et seq., applies to all of all the territory located within the Parish of Natchitoches. La.R.S. 34:3261.
[2] Emphasis added.
[3] It should be noted that while the State Land Office was previously part of the Department of Natural Resources, La.R.S. 36:4(B)(13) placed the State Land Office within the Division of Administration. La.R.S.36:4(B)(13) states that "the functions of the Registrar of the State Land Office and the State Land Office (R.S. 41:1-19 and generally all of Title 41 of the Louisiana Revised Statutes of 1950) previously abolished by Act No. 513 of the 1976 Regular Session of the Legislature, and the administration and supervision of State lands is hereby placed within the office of the governor, division of administration."
[4] Emphasis added.
[5] La.R.S. 41:1704(1) defines an "encroachment" as "any construction, or improvement, obstacle, fill, or material which is placed upon or maintained upon state lands." La.R.S. 41:1704(10) defines "landfill" as "the direct or induced raising or elevating of any navigable water bottom by deposit to the extent that newly emerging land results, not covered at mean low water or navigable or navigable rivers and streams or mean high water on other State properties."
[6] La.R.S. 41:1706(1).
[7] La.R.S. 41:1706(2).
[8] La.R.S. 41:1706(3).
[9] La.R.S. 41:1706(4).
[10] La.R.S. 41:1706(5).
[11] Emphasis added.
[12] It is important to distinguish the difference between "structures, works, locks, wharves, anchorages, and special facilities constructed by the commission", as well as "wharves, docks, warehouses, elevators and other facilities located on property owned by the District" from seawalls, docks, boathouses, and other structures constructed by private individuals on or near riparian lands on State-owned water bottoms. See La.R.S. 34:3269(7).
[13] The State permitting provisions do not exempt those seeking to add fill to State water bottoms from any applicable requirements under Section 404 of the Clean Water Act, which is enforced by the United States Army Corps of Engineers.
[14] La.R.S. 34:3269(13).
[15] See La.R.S. 41:1708.